

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00093-CR
_____

DOUDLEY SCOTT MALOY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0819781

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Doudley Scott Maloy appeals his conviction for aggravated sexual assault of his grandchild and indecency with the child by sexual contact. Maloy brings four points of error contending (1) the trial court erred in permitting Martha Dykes, a social worker, to testify regarding her interview with S.M.B. (the child victim), maintaining that Dykes was not the proper outcry witness as defined by Article 38.072 of the Texas Code of Criminal Procedure;[1] (2) the trial court erred in admitting the recorded interview of S.M.B. by Dykes; (3) the tacit consent of the trial court in allowing interference of the court proceedings by the district attorney's investigator and the court's bailiff created an air of sympathy for S.B. (the victim's mother) and for S.M.B., rising to the level of a silent comment on the weight of the evidence by the court; and (4) the evidence is legally and factually insufficient to support conviction. After reviewing Maloy's points of error, we affirm his conviction.[2]

I.      BACKGROUND

On August 8, 2007, S.M.B.'s parents left her[3] and her siblings in the care of their grandfather, Maloy, and Maloy's mother. While S.M.B. was playing a video game in Maloy's

---

[1]TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2009).

[2]The initial judgment reflects a finding of guilt on the charge of aggravated sexual assault of a child. TEX. PENAL CODE ANN. § 22.021(a)(2)(b) (Vernon Supp. 2009); the second and third judgments reflect a finding of guilt on two separate charges of indecency with a child by sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon Supp. 2009).

[3]S.M.B.'s date of birth is September 27, 1996. She was ten years old at the time of the assault and twelve years old at the time of trial.

bedroom, Maloy pulled her shorts aside and licked her in the lower private area and then licked her and touched her in the higher private area.[4]  After this, Maloy told S.M.B. that she would like what he just did when she got older.

Later that evening, S.M.B. told her mother, S.B., that "Paw-Paw [Maloy] pulled her shorts and panties to the side and licked her."  S.B. knew that S.M.B. was talking about her female sexual organ from "the way she talked, because she was kind of shaky and clammy.  She was afraid she would be in trouble."  Upon further questioning of her daughter, S.B. learned that Maloy had told S.M.B. that "You'll like it when you're older."  S.B. went on to relate that S.M.B. had told her that Maloy then pulled S.M.B.'s shirt up and licked her on the breast and said, "You'll also like this."  When S.B. questioned Maloy about this occurrence, Maloy denied the allegation.[5]

After having confronted Maloy, an argument erupted among family members.  Aaron Hanna, a Hopkins County Sheriff's deputy, was dispatched to the home, where he took a statement from S.M.B.  Hanna's report of the interview indicated that S.M.B. told Hanna that Maloy pulled her shorts and panties aside and looked at her.

Dykes, a social worker and forensic interviewer for the Northeast Texas Child Advocacy

---

[4]S.M.B. called the "lower private area" the genital area, where she uses the bathroom.  S.M.B. defined the "higher private area" as her breast.

[5]During this testimony, S.B. became very emotional, and the district attorney's investigator, Ron Mayberry, entered the bar from the gallery to deliver tissues to her.  At the same time, the court's bailiff, John Hipkins, walked across the courtroom to hand tissues to S.B.

3

Center, conducted an interview with S.M.B. on August 23, 2007. Dykes was called by the State to testify about the information she learned upon interviewing S.M.B.[6] While Dykes never offered in-court testimony regarding what S.M.B. told her of the events of August 8, 2007,[7] a video recording of Dykes's interview with S.M.B. was admitted into evidence over Maloy's objection and was published to the jury. The interview contained detailed information about the events of the day in question.

Maloy was tried and convicted by a jury of aggravated sexual assault of a child and was sentenced to twenty-eight years in the Texas Department of Criminal Justice. Maloy was also convicted of two counts of indecency with a child by sexual contact, for which he was sentenced to seven and four years' imprisonment, respectively. Each of the three sentences runs concurrently. Maloy was also charged with two other offenses[8] involving S.M.B., of which Maloy was acquitted.

## II.     ANALYSIS

### A.      Dykes's Testimony Regarding the Interview With S.M.B.

---

[6]Maloy objected to the admission of outcry testimony regarding the events of August 8, 2007. The trial court did not rule on the objection; Maloy renewed his objection to Dykes's testimony with respect to the events of August 8, 2007. The court did not rule on the objection, but took it under advisement.

[7]Dykes was designated as an outcry witness for two allegations of indecency with a child by contact that was alleged to have occurred prior to August 8, 2007. Maloy was acquitted of these additional charges.

[8]These had to do with events that occurred prior to August 8, 2007, in which it was alleged that Maloy touched S.M.B.'s breast.

4

Maloy broadly alleges that the trial court erred in allowing Dykes to testify about her interview with S.M.B. Maloy did not dispute that Dykes was the proper outcry witness regarding events that occurred prior to August 8, 2007 (to which no objection has ever been made by Maloy). We, therefore, construe Maloy's complaint on this issue to be confined to Dykes's testimony pertaining to S.M.B.'s statements describing the events of August 8, 2007.

The first question propounded to Dykes about the events of August 8 was whether S.M.B. told her about the allegations against Maloy that occurred on that date. No objection was made to this query; the response was simply, "Yes, she did." Dykes was then asked whether S.M.B. discussed those allegations in some detail. Once again, there was no objection to the question and the response was simply, "Yes." Later, Dykes was asked (in connection with events that occurred prior to August 8) if she was able to determine if the touching was playful or for sexual gratification. In response, Dykes testified that S.M.B. stated that she did not like what Maloy did, but that "he had made comments that she would like it when she was older." Upon hearing this testimony, Maloy objected in relation to the statement that "she would enjoy it later on."[9] The trial court took the objection under advisement, but did not rule on it.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); *Brown v. State*, 189 S.W.3d 382, 385 (Tex. App.—Texarkana 2006, pet. ref'd). In cases involving certain sex crimes against children, Article 38.072 of the Texas Code of Criminal Procedure

[9]This statement was expressly made in connection with the events of August 8, 2007.

provides an exception to the hearsay rule for testimony by "outcry witnesses" when specific requirements are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. An outcry witness is the first person, eighteen years of age or older, other than the defendant, to whom the child victim made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3).

Maloy contended at trial and on appeal that Dykes was not a proper outcry witness to the August 8 events because the child's mother was the first person meeting the statutory definition of an outcry witness to whom S.M.B. made a statement about those events. However, except for one isolated comment, the testimony elicited from Dykes would not be prohibited by the hearsay rule if given by her as a nonoutcry witness. Further, Maloy did not obtain a ruling on his objection pertaining to this. In order to preserve error in admitting evidence, a party must make a proper objection and secure a ruling on that objection. *See* TEX. R. APP. P. 33.1; *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). To the extent such testimony could be characterized as outcry testimony, any objections to the propriety of this testimony were waived when Maloy failed to press to the point of obtaining an adverse ruling on his objection relating to the events of August 8, 2007. We find no abuse of discretion in the admission of the referenced testimony, and therefore overrule this point of error.

## B. Admission of the Recorded Interview

Maloy further complains that it was error to admit the video recording of Dykes's interview with S.M.B. Again, Maloy asserts that Dykes was not the proper "outcry witness"

under Article 38.072 of the Texas Code of Criminal Procedure because S.M.B. made specific allegations of sexual assault to S.B. prior to her interview with Dykes.

It is undisputed that S.M.B. made a statement about the incident to her mother, S.B., before she ever spoke with Dykes.[10] The State provided notice that S.B. was the proper outcry witness regarding the events of August 8, 2007, by filing the notice required by Article 38.072 of the Texas Code of Criminal Procedure. In addition, the State provided notice pursuant to Article 38.072 that Dykes was the proper outcry witness regarding events occurring prior to August 8, 2007. The State neither contended at trial nor on appeal that the video recording of Dykes's interview with S.M.B. was offered as outcry testimony. Instead, the recorded interview was admitted as a prior consistent statement under Rule 801 of the Texas Rules of Evidence, which provides that a statement is not hearsay if the declarant testifies at trial, is subject to cross-examination concerning the statement, and the statement is

> consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

TEX. R. EVID. 801(e)(1)(B).

The trial court relied on *Hammons v. State*, 239 S.W.3d 798 (Tex. Crim. App. 2007), in concluding that the video recording was admissible as a prior consistent statement. The Texas Court of Criminal Appeals in *Hammons* explained that:

---

[10]The outcry statement made to S.B. is outlined in the previous portion of this opinion.

7

> [A] reviewing court, in assessing whether the cross-examination of a witness makes an *implied* charge of recent fabrication or improper motive, should focus on the "purpose of the impeaching party, the surrounding circumstances, and the interpretation put on them by the [trial] court." Courts may also consider clues from the voir dire, opening statements, and closing arguments. From the totality of the questioning, giving deference to the trial judge's assessment of tone, tenor, and demeanor, could a reasonable trial judge conclude that the cross-examiner is mounting a charge of recent fabrication or improper motive? If so, the trial judge does not abuse his discretion in admitting a prior consistent statement that was made before any such motive to fabricate arose.

*Id.* at 808–09.

As with most evidentiary rulings, a trial court's determination that a prior consistent statement is admissible because the cross-examination suggested or implied an assertion of recent fabrication or improper motive is reviewed only for an abuse of discretion. *Id.* at 804, 806. The video recording was permitted in evidence after the State assured the court that the testimony of the child victim would be forthcoming. As a result of the sequence of introduction of evidence, the trial court was not provided the opportunity to determine whether cross-examination suggested or implied an assertion of recent fabrication because the video recording was introduced and published to the jury *prior* to the time S.M.B. was cross-examined. Defense counsel objected to this chronology of introduction of evidence as allowing the admission of hearsay, and correctly contended that "[I]t is not a prior consistent statement, because the witness hasn't testified yet . . . ." *Hammons* explicitly requires a determination by the trial court of whether the cross-examiner is mounting a charge of recent fabrication or improper motive. *Id.* at 808–09. This determination is aided by the trial court's assessment of the tone, tenor, and demeanor of the

witness, as well as the totality of the questioning. *Id.*

The recorded interview between Dykes and S.M.B. failed to qualify as a prior consistent statement because S.M.B. had not yet testified at the time the recorded statement was introduced. We do not condone the procedure employed here (i.e., the introduction of an alleged prior consistent statement on the promise of *future* testimony from the declarant).[11] By admitting the video recording into evidence, the trial court allowed evidence into the record that was in violation of the Texas Rules of Evidence. The ruling of the trial court is therefore outside the zone of reasonable disagreement. We, therefore, conclude that the trial court erred by admitting the evidence.

Improper admission of hearsay evidence amounts to nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Dunn v. State*, 125 S.W.3d 610, 614 (Tex. App.—Texarkana 2003, no pet.). Any nonconstitutional error which does not affect substantial rights must be disregarded. *See* TEX. R. APP. P. 44.2(b). We may not reverse a defendant's conviction for nonconstitutional error if, after examining the record as a whole, we have a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). In determining harm, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of

---

[11]When asked by the trial court if S.M.B. would testify, the State's attorney stated, "I give you my word, she will - - barring something totally unforeseen, but it's my intention to bring her forward tomorrow."

the alleged error and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). We note that S.M.B. testified later in the trial; her testimony essentially mirrored the information in the recording.

In situations where an improperly admitted video recording "essentially repeated the testimony" of the victim, when the victim also testifies and the video recording is cumulative of the victim's properly admitted testimony on the same issue, courts often disregard the error, reasoning that it could not have affected the appellant's substantial rights. *Dunn*, 125 S.W.3d at 615 (citing *Jensen v. State*, 66 S.W.3d 528, 537 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) (op. on remand). Such is the case here. We find that, because S.M.B.'s testimony at trial "essentially repeated" the statements contained in the recorded interview, the erroneous admission of the recording does not affect Maloy's substantial rights and amounted to harmless error. *See* TEX. R. APP. P. 44.2(b). This point of error is overruled.

## C. Silent Comment on the Weight of the Evidence?

While testifying, S.B. became very emotional; an investigator with the district attorney's office and the courtroom bailiff both delivered tissues to her, these taking place without leave of the court. Maloy contends that by permitting this to take place, the trial court made a silent comment on the weight of the evidence. Maloy objected to this alleged display of sympathy or perhaps mere assistance:

10

> Your Honor, I agreed to allow [S.B.] to be helped to the chair by her husband, but this bringing officers out of - - in order to hand her tissues and the bailiff handing her tissues is way more prejudicial as to what it is, and I'd ask that, you know, unless there's a specific problem, that they keep their seat and not become a part of this proceeding. . . . I'd ask the Court to instruct the jury to disregard.

The trial court noted the objection and determined that because S.B. had a box of tissues, there should be no further movement; the objection was overruled.

Maloy concedes that the emotions of the witness appeared to be an honest display of pain and sorrow, and the reactions of the bailiff and the investigator were genuine displays of empathy. He contends, however, that such displays of emotion created an environment that was hostile to Maloy as being the one person in the room that caused the pain and sorrow. Consequently, Maloy maintains that the court's silence and hence, its tacit approval of such displays of empathy, could convey to the jury the trial court's opinion of the testimony offered by S.B. Said another way, the failure of the court to intervene and admonish the two to refrain from further interfering with the proceedings and its failure to instruct the jury to disregard the display of sympathy could lend credibility to the testimony offered by S.B.

Maloy contends the trial court's ruling amounts to an impermissible "silent" comment on the weight of the evidence in violation of Article 38.05 of the Texas Code of Criminal Procedure. Article 38.05 provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous

11

> to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979). A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, that indicates any disbelief in the defense's position, or that diminishes the credibility of the defense's approach to its case. *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.).

Here, no comments were made by the trial court. The court simply overruled an objection made at the bench outside the hearing of the jury, as it had the discretion to do. Under the facts presented, we decline to interpret the failure to sustain an objection as a comment on the weight of the evidence. S.B. was distraught and wept during her testimony. Often, the nature of the matter being tried is filled with sadness and pain and it would not be unusual or unexpected for a witness in like circumstances to weep while testifying. Maloy complains that the offer of tissues to the weeping witness created an environment that was hostile to Maloy as being the one person in the room that caused the pain and sorrow.[12] Such a conclusion does not withstand logic and reason. If any such environment existed, that environment was not created by the mere offer of tissues. The fact that a witness is unable to maintain her composure while relating painful testimony is part and parcel of the nature of a trial involving emotional circumstances. The jury is permitted to

---

[12] As something of an observation, one must wonder if it would evoke a more emotional response on the part of the jury to have had people bringing the woman tissues to blot her tears or whether it would have been more heart rending for the jury to see the tears continue to stream down her cheeks unabated.

12

judge the credibility of the witness, and will do so whether or not she weeps or is offered tissue. The ruling of the trial court was within the bounds of reasonable disagreement. We overrule this point of error.

**D. The Evidence Is Legally and Factually Sufficient to Support Conviction**

In his final point of error, Maloy contends the evidence is legally and factually insufficient to support his conviction of aggravated sexual assault and two counts of indecency with a child by contact.

We review the legal and factual sufficiency of the evidence supporting a conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (en banc). In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006).

We may find evidence factually insufficient in two ways: (1) the evidence supporting the

14

conviction is "too weak" to support the fact-finder's verdict, or (2) considering conflicting evidence, the fact-finder's verdict is against the great weight and preponderance of the evidence. *Laster*, 275 S.W.3d at 518. In so doing, we may find the evidence insufficient when necessary to prevent manifest injustice. *Id*. Although we give less deference to the verdict in a factual sufficiency review, we will not override the verdict simply because we disagree with it. *Id*. Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Maloy attacks the evidence as being legally and factually insufficient to support his conviction of aggravated sexual assault, as alleged in count one of the indictment. Count one alleges that Maloy caused the female sexual organ of S.M.B., a child who was younger than fourteen and not the spouse of the defendant, to contact the mouth of the defendant.[13] S.B. testified that Maloy pulled S.M.B.'s shorts and panties to the side and licked her. S.B. further testified that she knew S.M.B. was referring to her female sexual organ because of the "way she talked, because she was kind of shaky and clammy. She was afraid she would be in trouble."

We do not consider the testimony of S.B. in a vacuum, aside from other evidence presented at trial. In this regard, S.M.B. testified that "He licked me down in the lower private area and then

[13]A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii) (Vernon Supp. 2009).

15

licked me in the higher private area." Maloy told S.M.B. she was going to like it when she got older. When asked if "private area" means the genital area, S.M.B. unequivocally stated that was the area to which she made reference. We find this evidence to be both legally and factually sufficient to support Maloy's conviction of aggravated sexual assault of a child.

Counts two and three of the indictment allege that Maloy, with the intent to arouse or gratify the sexual desire of the defendant, intentionally or knowingly engaged in sexual contact with S.M.B. by (1) touching the breast of S.M.B. with the defendant's mouth; and (2) touching the breast of S.M.B. with the defendant's hand. While Maloy states in his brief that he challenges the factual sufficiency of the evidence to support the elements of the offense of indecency with a child, he fails to explain the basis of this challenge and does not provide authority in support of this challenge.

Rule 38.1(i) of the Texas Rules of Appellate Procedure requires that the brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Because Maloy has failed to present argument for his contention that the evidence is factually insufficient with respect to the convictions based upon indecency with a child, this point of error has not been adequately briefed. *See id.*; *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) ("It is incumbent upon counsel to cite specific legal authority and provide legal argument based upon that authority."). We overrule Maloy's legal and factual sufficiency points of error.

16

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     June 30, 2010
Date Decided:       July 9, 2010

Do Not Publish

18